## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **DJM ENTERPRISES, LLC,** | ) | **Case No.  15-20029** |
| | ) | **Chapter   11** |
| Debtor | ) | |

## FOURTH AMENDED DISCLOSURE STATEMENT
## November 28, 2017

**I.     INTRODUCTION**

    **A.     Purpose of this Document**

    **B.     Time and Place of Hearing to Confirm the Plan**

    **C.     Voting to Accept or Reject the Plan;**

    **D.     Disclaimer**

**II. BACKGROUND**

    **A.     Introduction of Debtor and Events Leading to the Bankruptcy Filing**

    **B.     Insiders of the Debtor**

    **C.     Management of the Debtor's Financial Affairs Before and During Bankruptcy**

    **D.     Significant Events in this Bankruptcy Case**

    **E.     Projected Recovery of Avoidable Transfers**

    **F.     Objections to Claims**

    **G.     Liquidation Analysis**

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.     The Purpose of the Plan of Reorganization

B.     Unclassified Claims

C.     Classes of Claims and Equity Interests

D.     Means of Implementing the Plan

E.     Risk Factors

F.     Executory Contracts and Unexpired Leases

G.     Tax Consequences of Plan

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

A.     Introduction

B.     Who May Vote or Object

C.     Who is not Entitled to Vote?

D.     Who Can Vote in More Than One Class

E.     Votes Necessary to Confirm the Plan

F.     Creditors Who Do Not Accept the Plan

G.     Feasibility

## V. EFFECT OF CONFIRMATION OF PLAN

A.     Discharge of Debtor and Injunction

B.     Modification of Plan

C.     Final Decree

D.     Substantial Consummation

E.     Retained Jurisdiction

## I.    INTRODUCTION

This Disclosure Statement is filed pursuant to 11 U.S.C. §1125, D. Me LBR 3016-1, and 30

17-1 and 3, and Federal Bankruptcy Rules 3016-3017 in the individual Chapter 11 case of

DJM Enterprises, LLC (the "Debtor"). This document contains information about the Debtor

and describes its Third Amended Plan of Reorganization dated March 16, 2017 (the

"Plan") filed by the Debtor on March 16, 2017 A full copy of the proposed Plan is attached to

this Disclosure Statement as Exhibit A.

The claims of DJM are classified into eleven (11) classes as follows:

*Class 1 -  The claim of HSBC Secured by Real Estate located at 220 Elm St., Biddeford, ME*

*Class 2  - The claim of LaSalle Bank/Litton Secured by Real Estate located at 210 Elm St., Biddeford, ME*

*Class 3  - The claim of GMAC Secured by Real Estate located at 72 High St., Sanford, ME*

*Class 4 -   The claim of Monarch Enterprises Secured by Real Estate located at 777 Main St.., Sanford, ME*

*Class 5 -   The claim of Deutsch Bank Secured by Real Estate located at 45 West Road., Waterboro, ME*

*Class 6 -   The claim of Deutsch Bank Secured by Real Estate located at 50 High St. Sanford, ME*

*Class 7 -   The claim of Deutsch Bank Secured by Real Estate located at 206-208 Elm St., Biddeford, ME*

*Class 8 -   The claim of Bangor Savings Bank Secured by Real Estate located at 22 Peppercorn Lane Waterboro and 196 Elm St., Biddeford, ME*

*Class 9 – The claims of the Municipalities for unpaid real estate taxes, sewer and water*

*Class 10 – The Class of creditors holding unsecured claims, including the undersecured portions of secured claims subject to valuation.*

*Class 11 The interests of equity security holders*

Under Code section 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

Thirty (30) days after the Effective Date of the Plan, the Debtor will make monthly distributions toward other obligations of the plan, including priority taxes and unsecured creditors. These distributions will be calculated on the basis of the "Proposed Budget for Chapter 11 Plan" attached hereto. Projected monthly distributions of $6,359.95 shall be allocated as follows:

1. *Class 1 -  The claim of HSBC -*$1,312.00 per month;

2. *Class 2  - The claim of LaSalle Bank/Litton -* $568.12 per month;

3. *Class 3  - The claim of GMAC -* $693.84 per month;

4. *Class 4 -   The claim of Monarch Enterprises -* $472.64 per month;

5. *Class 5 -   The claim of Deutsch Bank -* $377.16 per month;

6. *Class 6 -   The claim of Deutsch Bank -* $663.61 per month;

7. *Class 7 -   The claim of Deutsch Bank -* $759.09   per month;

8. *Class 8 -   The claim of Bangor Savings Bank -* $2,656.35 per month :

9. *Class 9 – The claims of the Municipalities -* $265.10 per month;

10. *Class 10 – The Class of creditors holding unsecured claims -* $0 no claims within the class;

11. Class 11 The interests of equity security holders - The interests of the

4

members of the Debtor LLC shall be retained but be subordinate to all classes of administrative, secured and unsecured claims

Upon the Initial Monthly Distribution and each subsequent Monthly Distribution, Debtor's counsel shall transmit a disbursement report to the U.S. Trustee's Office in addition to any other reports currently required.

**A.      Purpose of this Document**

This Disclosure Statement describes:

1.      how the Debtor came to filing a Chapter 11 bankruptcy;

2.      significant events during this case;

3.      how the Plan proposes to treat claims or equity interests of the

type held by different creditors (i.e., what you will receive on your claim

or equity interest if the plan is confirmed);

4.      who can vote on or object to the Plan;

5.      what factors the Bankruptcy Court (the "Court") will consider when

deciding whether to confirm the Plan;

6.      why the Debtor believes the Plan is feasible;

7.      how treatment of claims or equity interests under the Plan compares to what

creditors would receive on claim or equity interest in liquidation (or a

Chapter 7 Bankruptcy filing by the Debtor); and

8.      the effect of confirmation of the Plan.

**PLEASE READ THE PLAN AND THIS DISCLOSURE STATEMENT. WHILE THE**

**DISCLOSURE STATEMENT DESCRIBES THE PLAN, THE PLAN, IF CONFIRMED BY THE COURT, ESTABLISHES THE RIGHTS OF CREDITORS.**

## B.    Time and Place of Hearing to Confirm the Plan

The Court has not yet confirmed the Plan described in this Disclosure Statement. The hearing at which the Court will determine whether to confirm the Plan will take place on _____TBD_____ 2017, at _____a.m. at the United States Bankruptcy Court, 547 Congress Street, Second Floor, Portland, Maine.

## C.    Voting to Accept or Reject the Plan;

1    Deadline for Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Jeffrey P. White, Jeffrey P. White and Associates, P.C., 243 Mt. Auburn Ave., S. B-1, Auburn, ME 04210. See Section IV. (A) below for a discussion of voting eligibility requirements.



Your ballot must be received by Jeffrey P. White, Jeffrey P. White and Associates, P.C., 243 Mt. Auburn Ave., S. B-1, Auburn, ME 04210 no later than _____TBD_____, 2018, or it will not be counted.

2.    Deadline for Objecting to Confirmation of the Plan

Objections to confirmation of the Plan must be filed with the Court and served upon the Debtor, through their counsel Jeffrey P. White, Jeffrey P. White and Associates, P.C., 243 Mt. Auburn Ave., S. B-1, Auburn, ME 04210 by

6

_____TBD_____, 2018.

3.      Identity of Person to Contact for More Information

Contact Jeffrey P. White, Jeffrey P. White and Associates, P.C., 243 Mt. Auburn

Ave., S. B-1, Auburn, ME 04210 for more information about the Plan.

**D.      Disclaimer**

At a hearing held on _____, 2018, the Court approved this Disclosure

Statement as containing adequate information to enable parties affected by the Plan

to make an informed judgment about its terms. The Court has not yet determined

whether the Plan meets the legal requirements for confirmation, and the fact that the

Court has approved this Disclosure Statement does not constitute an endorsement of

the Plan by the Court, or a recommendation that it be accepted.

**A.      Introduction of Debtor and Events Leading to the Bankruptcy Filing**

The Debtor is a Limited Liability Company established on June 21, 2002.  The sole

member/manager is Deborah J. Miles.  Prior to the filing of this case, Deborah J. Miles

owned six (6) of the properties that are the sought to be reorganized under these

proceedings and the Debtor owned three (3) of the Properties sought to be reorganized

under these proceedings.   By late 2009, Deborah Miles and the Debtor, had each

defaulted on their obligations to various lenders and certain lenders initiated foreclosure proceedings under state law. In order to protect the assets on all nine (9) properties, Deborah J. Miles, filed a Chapter 13 bankruptcy on December 28, 2009, in the United States Bankruptcy Court for the District of Maine, Case No. 09-21984. The filing was an attempt to reorganize the same nine (9) parcels of real estate involved in this Chapter 11 proceeding. The Chapter 13 filing was necessitated by a combination of high borrowing costs, high general and administrative costs, and vacancy issues, some or all of which factors were a product of the general economic downturn and credit shortages that plagued the U.S. economy generally in 2008 and 2009. Deborah J. Miles and the Debtor were left with less than adequate working capital due to these issues. While a Plan was confirmed in Deborah Miles case on December 16, 2010, the case was dismissed upon the motion of Deborah J. Miles on June 27, 2011. Dismissal was sought because the restrictions placed upon a reorganization of a Chapter 13 Debtor did not allow a restructuring upon terms which Ms. Miles believed would lead to a long term cash flow position.

As stated previously, DJM was always been the owner of three (3) properties. In August of 2011, Deborah J. Miles caused six (6) additional properties to be transferred from herself individually, to DJM Enterprises, LLC, by quitclaim deed. Each transferred property as well as the three (3) original properties owned by DJM are subject to mortgages as outlined in the summary of Classes 1-9 set forth herein. Accordingly, with the exception of the Bangor Savings Bank and Monarch Enterprises all mortgage debt sought to be reorganized in these proceedings is in rem

8

only.

On August 24, 2011, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code as Case No. 11-21235.  The purpose was to reorganize its nine (9) properties.  The case was confirmed by this Court on February 16, 2013.  The Debtor had early success under that confirmed plan and a Final Decree was entered in Case No. 11- 21235 on February 14, 2014.

The Debtor fell behind on its obligations in the fall and winter of 2015, due to excessive energy costs, a rash of tenant problems and an onerous payment schedule with Bangor Savings Bank. The Debtor again sought bankruptcy relief, and this case was commenced on  January 22, 2015.

Debtor's breakdown of payments made on each property since 2011 is attached hereto. In addition to the aforementioned payments, Debtor also paid Bangor savings Bank a lumpsum payment on January 1, 2011; deposited an escrow for oil of $6,000.00 in 2013;  and had her loan to Bangor Savings Bank increased by $20,000.00 for Bangor's attorney fees.   A $14,000.00 loan from Bangor Saving's Bank for a furnace replacement was paid off in 2013.

 The Plan in this case contemplates the ongoing rental of the nine (9) properties and

generating sufficient cash flow to meet current expenses and to pay outstanding
municipal obligations and a small dividend to general unsecured creditors over the life
of the plan. This will be possible only if each mortgage loan is modified in a manner
that comports with the expected cash flow of the Debtor.  Debtor believes the terms
as proposed in the plan meet this expectation.

**B.      Insiders of the Debtor**

Insiders of the Debtor are limited to:

Deborah J. Miles, Member and Manager. The plan does not contemplate payments to
the member of the LLC but does provide for the retention of her membership interest.
She will be taking a modest monthly compensation of $1,500.00 for personal use.
Other than the assets of DJM, Deborah J. Miles has no assets and no independent
ability to contribute future capital to the Debtor except out of future profits.  Any
capital contribution would have to be borrowed and it is reasonably believed that Ms.
Miles would be unable to obtain any substantial loan amount given her in personam
liability on the mortgage debts for the nine (9) properties being reorganized herein
and her prior recent Chapter 13 bankruptcy filing.

**C.      Management of the Debtor's Financial Affairs Before and During
Bankruptcy**

Prior to the filing of this bankruptcy petition, Deborah J. Miles was the primary

manager of the LLC, and she will continue to do so after the effective date of the order confirming the Plan.  Miles will ontinue to receive compensation of $1,500.00 for her services.

**D.      Significant Events in this Bankruptcy Case**

1.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 22, 2015

2.      On February 25, 2015, the Court entered an Order granting the Debtor's Application to Employ Jeffrey. P. White, Esq. as Debtor's counsel.

3.      On March 3, 2015, the First Meeting of Creditors under section 341 of the Bankruptcy Code was held and concluded.

4.      On April 4, 2015, a status conference was held before the Court.

5.      On May 6, 2015, Bangor Savings Bank filed a Motion for Relief from Stay regarding the property located at 220 Elm St., Biddeford, ME.  The matter is set for a preliminary hearing on June 9, 2015.

6.      On May 26, 2015, Debtor filed a plan.

7.      The Proof of Claim Bar date was June 1, 2015, as to all creditors

11

except governmental units which shall have until July 21, 2015 to file claims.

8.  On July 7, 2015, an evidentiary hearing was held on the Motion from relief from stay filed by Bangor Savings Bank.  The Motion was denied.

9.  Debtor commenced adequate protection payments to each and every secured creditor starting February 2016, and continued to do so.  Those payments mirror the plan payments.

10. Debtor filed an amended plan and s disclosure statement.  After a hearing on May 17, 2016, confirmation of that amended plan was denied.  Debtor was granted until June 17, 2016 to file a Second Amended Plan and Disclosure Statement.

11. On June 17, 2016, a Second Amended Plan and Disclosure Statement was filed and was set for hearing on November 2, 2016.  Bangor Savings Bank objected to the Amended Disclosure Statement and the Court sustained the objection at a hearing on November 2, 2016.

12. On January 12, 2017, Bangor Savings Bank filed a Motion to Dismiss case.  The Debtor objected.  The motion was denied on April 25, 2017.

13. Counsel for the Debtor was awarded interim compensation of $32, 159.25 on May 30, 2017.  Debtor has paid the fee award out of cashflow from the business.

14. Debtor obtained the approval of a Third Amended Disclosure Statement and sough confirmation of a Third Amended Plan on October 31, 2017.  Bangor savings Bank again objected to the plan and sought to block confirmation of the plan due to a violation of the absolute priority rule.  The court ruled that the absolute priority rule did not apply, but never the less denied confirmation on October 31, 2017, due to doubts as to feasibility.

15. Bangor savings bank filed a competing plan on October 21, 2017.  Debtor will be filing an objection thereto as well as an objection to its claim.

16. The October 2017 Operating report showed an available cash

balance of $77,892.67 and an actual cash balance of
$140,064.99.

**E.      Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preferences, fraudulent conveyances, or other

avoidance action. The Debtor is unaware of the existence of such matters in connection

to its pre-petition financial affairs.

**F.      Objections to Claims**

Except to the extent that a claim is already allowed pursuant to a final non-

appealable order, the Debtor reserves the right to object to claims: therefore, even if

a claim is allowed for voting purposes, it may not be entitled to a distribution if an

objection to the claim is later upheld. The procedures for resolving disputed claims

are set forth in Article VI of the Plan.

**G.      Liquidation Analysis**

Under a hypothetical Chapter 7, the nine (9) parcels of real estate referenced in

the Introduction of this Disclosure Statement would be liquidated. According to

the schedules, the properties are valued at $1,328.00.00. These values were

derived from comparative market analysis performed for each property in

2009 at the request of Deborah J. Miles.  Debtor is not aware of any other

comparative market analysis or appraisals of any property that have occurred

subsequent to the date of the referenced 2009 CMA's. A complete listing of

Debtor's assets and Debtor's stated value for each asset is listed on the Liquidation Analysis attached hereto.

The mortgages, statutory liens and priority claims against the properties are listed on Debtor's schedules as exceeding $1,284,034.63. Accordingly, it is Debtors estimate that after costs of sale and administrative expenses, there would be no money available for distribution to unsecured creditors. Debtor lists cash and personal property valued at $15,800, as of January 22, 2015. The Debtor's October 2017 Monthly Report lists available cash in the bank of $77,892.67. Again it is Debtor's estimate that after costs of sale and administrative expenses, there would be no money available for distribution to unsecured creditors from a sale of the personal property.

Generally, the Plan proposes to pay the secured creditors holding only an in rem claim against each parcel of real estate in accordance with the value of that real estate amortized over 30 years at 4.0% as to all creditors except Bangor Savings Bank, who is receiving 5.15%, and the tax lien, priority tax claims and unsecured creditors in full. With exception of the Bangor Savings Bank and Monarch Enterprises all mortgages are in rem only.

A Four Year Projection for Chapter 11 Plan broken down by property, is attached hereto.

The projections are extrapolated from historical figures and that said historical figures are not necessarily representative of future income and

14

expenses.  The projections are based upon a systematic increase of rents as set out in the assumptions accompanying the projections. Rental increases as well as the useful lives of the property were calculated using US CPI forecasts and Bureau of Labor Statistics analysis.  While expenses may vary based upon occupancy, fuel costs, repairs and other items not within the control of the Debtor, the Debtor's projections establish that in excess of $80,00.00 per year is available each year to cover unanticipated expenses or occupancy issues.  The Debtor has performed extra  maintenance throughout these proceedings (including replacing a retaining wall costing in excess of $30,000 and two porches).  Debtor is not aware of any major structural work that needs to be done or of any pending housing code violations.  Debtor has not experienced any vacancies exceeding sixty (60) days since the pendency of this case.

Notably, since filing, the Debtor has implemented the following:

A.  The tenants at 45 West Rd now pay the heating costs for the property for the property.  This is a savings of about $400.00 per month in winter, and $2,000.00 per year overall;

B.  Implementing a floor on heating costs on all other apartments pursuant to which rent will be increased by $25.00 to $50.00 per month (depending on apartments size) whenever heating oil goes over $3.00 per gallon;

C.  Placing Deborah Miles former apartment at 72A High St. on the rental market adding $900.00 per month to Debtor's cashflow;

D.  Completing an unfinished apartment and placing for rent at $800.00 per month;

E.  After confirmation, the Debtor will save $650.00 per quarter in quarterly US Trustee Fees;

F.  Note:  Debtor received a Notice of Debt forgiveness of $93,916.10 on 72 High St.

G. Debtor's October 2017, Monthly Report showed a cash balance of $77,892.67, and a bank balance of $140,064.99.

Copies of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case are available on the Court's ECF site and can be obtained therefrom or from Debtor's Counsel, Jeffrey P. White, Jeffrey P. White and Associates, P.C., 243 Mt. Auburn Ave., S. B-1, Auburn, ME 04210, and will be provided upon request.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.     The Purpose of the Plan of Reorganization

Pursuant to the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. A class is impaired if the Plan alters the legal, equitable, and/or contractual rights of the holder of such claim or interest. If the Plan is confirmed, the recovery of creditors is limited to the amount provided by the Plan.

### Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under

the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponents have *not* placed the following claims in any class:

1.   Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a) (2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart describes the proposed treatment of administrative expense during the Plan:

| Type | Proposed Treatment |
|---|---|
| Business Expenses arising in the ordinary course of the Debtor's business after the petition date. | Paid in full as incurred. |
| Professional Fees ,to be approved by the Court | Paid on confirmation subject to approval of Court. Additional fees incurred since the last fee application exceed $14,452.00 |
| Clerk's Office Fees | Paid in full as incurred, subject to Court approval if applicable. |

| Other Administrative Expenses | Paid in full as incurred, subject to Court approval if applicable. |
| Office of the U.S. Trustee Fees | Paid in full as incurred pursuant to Local Rules |

2.      Debtor anticipates that additional attorney fees through confirmation will exceed an additional $6,000.00.  Debtor is current on all post-petition real estate taxes and ongoing expense obligations.

3.      Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by §507(a) (8) of the Code. Unless the holder of such §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order for relief.

Each holder of a Priority Tax Claim will be paid in full in monthly installments beginning ninety (90) days following the confirmation of the Plan Date. There are no known claims within this class.

C.      **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.      Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code.

The following lists the proposed treatment of secured claims under the Plan.

*Class 1 -  The claim of HSBC Secured by Real Estate located at 220 Elm St., Biddeford, ME*

The claim shall be allowed in the amount of its appraised value of $275,000.00.  The Allowed Amount shall be amortized over 30 years at 4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $1,312.00 per month.  Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

*Class 2  - The claim of OCWEN Secured by Real Estate located at 210 Elm St., Biddeford, ME*

The claim shall be allowed in the amount of its appraised value of $119,000.00.  The Allowed Amount shall be amortized over 30 years at

19

4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $568.12 per month.  Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

*Class 3  - The claim of GMAC Secured by Real Estate located at 72 High St., Sanford, ME*

The claim shall be allowed in the amount of its appraised value of $140,000.00.  The Allowed Amount plus an additional $5,291.67 for real estate taxes and insurance advanced by claimant, shall be amortized over 30 years at 4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $693.64 per month. Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

*.Class 4 -   The claim of Monarch Enterprises Secured by Real Estate located at 777 Main St.., Sanford, ME*

The claim shall be allowed in the amount of its appraised value of $99,000.00.  The Allowed Amount shall be amortized over 30 years at 4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $472.64 per month.  Claimant shall

retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

_Class 5 -  The claim of Deutsche Bank Secured by Real Estate located at 45 West Road., Waterboro, ME_

The claim shall be allowed in the amount of its appraised value of $79,000.00.  The Allowed Amount shall be amortized over 30 years at 4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $377.16 per month.  Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

_Class 6 -  The claim of Deutsche Bank Secured by Real Estate located at 50 High St. Sanford, ME_

The claim shall be allowed in the amount of its appraised value of $139,000.00.  The Allowed Amount shall be amortized over 30 years at 4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $663.61 per month.  Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

*Class 7 -   The claim of Deutsch Bank Secured by Real Estate located at 206-208 Elm St., Biddeford, ME*

. The claim shall be allowed in the amount of its appraised value of $159,000.00.  The Allowed Amount shall be amortized over 30 years at 4.0% interest per annum payable monthly commencing on the effective date of the plan.  The resulting payment is $759.09   per month.  Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied.

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such the time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired.

*Class 8 -   The claim of Bangor Savings Bank Secured by Real Estate located at 22 Peppercorn Lane Waterboro and 196 Elm St., Biddeford, ME*

Bangor asserts that it is owed $307,521.79 as of November 30, 2017.  Of this amount, Bangor Savings asserts that $51,097.20 is owed on the Waterboro property and $256,521.79 on the Biddeford property. Debtor contests those amounts and will be seeking a disallowance of at least a portion of the claims.  The amount actually owed shall be determined and allowed by the Court.  The allowed amount as determined by the Court shall be referred to as the Allowed Claim(s). The claims as asserted by Bangor Savings shall be provisionally allowed for voting purposes and confirmation, unless and until such claims are determined and allowed as Allowed Claims. Upon allowance, the monthly payments shall be adjusted to reflect the principal balance allowed by the Court amortized over the term and at the interest rates set out in the treatments set forth below.

Until the Allowed Claim is determined, the Allowed Amount on the Biddeford property shall be calculated by deducting the $6,000.00 "fuel escrow" it is holding from the principal balance leaving an amount due of $250,521.79 which will be amortized over 13 years at 5.150% interest per annum payable monthly commencing on the effective date of the plan. The resulting payment is $2,206.35 per month. The interest rate shall be adjusted on the first day of the 96th month to reflect a new interest rate determined by adding 1.0% to the Prime Interest rate as published in the Wall Street Journal on the last day of month 95 of the amortization schedule. Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied

Until the Allowed Claim is determined, the Allowed Amount on the Waterboro property shall be $51,097.20 which shall amortized over 13 years at 5.150% interest per annum payable monthly commencing on the effective date of the plan. The resulting payment is $450.01 per month. The interest rate shall be adjusted on the first day of the 96th month to reflect a new interest rate determined by adding 1.0% to the Prime Interest rate as published in the Wall Street Journal on the last day of month 95 of the amortization schedule. Claimant shall retain its mortgage lien against the real estate until its allowed claim is satisfied

Debtor shall maintain real property taxes and real property hazard insurance paid current for the Subject Property, and provided proof of said insurance to Creditor on a timely basis until such time as the Creditor's secured claim is paid in full. In the event Debtors fail to make the referenced tax or insurance payments, Debtors shall be liable for and tender all necessary escrow payments for any and all real property taxes and/or real property insurance advances made or to be made by Creditor.

This class is impaired

*Class 9 – The claims of the Municipalities for unpaid real estate taxes, sewer and water*

The claims of municipalities for unpaid prepetition real estate taxes, sewer and water total $8,906.98. These claims shall be paid pro rata over thirty-six (36) months at 4.0% interest per annum payable monthly commencing on the effective date of the plan. The resulting payment is $262.97 per month, which shall be divided pro rata among the claimants.

Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a) (1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

To the Debtor's knowledge, there are no non-tax Allowed Priority Claims in this case.

2.      General Unsecured Claims General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

At this time, the total dollar value of unsecured claims is not fixed, as the value of the under secured claims has not been determined. However, since all claims with the exception of Bangor Savings Bank are in rem only, it is anticipated that there will be no unsecured claims as Bangor Savings is the sole oversecured creditor also holding a promissory obligation with the Debtor.

The treatment of unsecured claimants under the Plan is as follows:

Class 10 – The Class of creditors holding unsecured claims, including the undersecured portions of secured claims subject to valuation.

All unsecured claims allowed under § 502 of the Code. Class 3 shall consist of all Allowed Unsecured Claims, but this Class shall not include (a) Claims included in another class; or (b) unclassified claims whose treatment is specified in Article IV of

24

the Plan.  No payment since no creditors are within this class.

4.      Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a Debtor, the Debtor is the equity interest holders:

Class 11 The interests of equity security holders

The interests of the members of the Debtor LLC shall be retained but be subordinate to all classes of administrative, secured and unsecured claims

**D      Means of Implementing the Plan**

1.      Source of Payments

Payments and distributions under the Plan will be funded by rental income generated by the Debtor's real estate and capital contributions from the members if necessary.

*2.*      Post-confirmation Management

Deborah J. Miles shall continue to manage the Debtor and the properties.

**E      Risk Factors**

The proposed Plan has the following risks:

1      The rental property may not produce cash flow at a level sufficient to fund

the plan.

2      The costs of operating expenses could increase to a level that makes it

impossible to carry out all the obligations of the plan as currently

constituted.

3      Unforeseen circumstances could impact the Debtor's ability to carry out

the plan.

**F.      Executory Contracts and Unexpired Leases**

1.      Debtor has no executory contracts.  All leases are on a month to month

basis.  In the event that any executory contracts exist, any executory

contract not expressly assumed prior to confirmation, shall be deemed

rejected.

2.    **CREDITORS SHOULD SEEK LEGAL OR OTHER ADVICE FOR MORE SPECIFIC
INFORMATION ABOUT PARTICULAR CONTRACTS OR LEASES.**

3.    The Debtor will be conclusively deemed to have rejected all executory

contracts and/or unexpired leases not expressly assumed, or before the

date of the order confirming this Plan, Upon the Confirmation Date, A

proof of claim arising from the rejection of an executory contract or

unexpired lease under this section must be filed no later than thirty (30)

days after the Confirmation Date.

4.    Creditors who object to the rejection of a contract or lease must file and

serve an objection to the Plan within the deadline for objecting to the

confirmation of the Plan.

5.    The Deadline for Filing a Proof of Claim on a Claim arising from the

rejection of a lease or contract is thirty (30) days after confirmation of the

Plan. Any claim based on the rejection of a contract or lease will be barred

if the proof of claim is not timely filed, unless the Court orders otherwise.

G.      **Tax Consequences of Plan**

1.      The Plan does not appear to create negative tax consequences for

the Debtor.

**CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.**

## IV. CONFIRMATION REQUIREMENTS AND

## PROCEDURES

A.      **Introduction**

To be confirmed, a Chapter 11 plan must meet the requirements of §§

1129(a) or (b) of the Bankruptcy Code. These requirements include the

following:

1.      the Plan must be proposed in good faith;

2.      at least one impaired class of claims must accept the plan without counting

votes of insiders;

3.      the Plan must distribute to each creditor and equity security holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

4.      the Plan must be feasible.

The above listed provisions are not an exhaustive list of those in § 1129 of the code. Many other standards must be met before the Court may confirm the plan. Creditors are encouraged to review §1129 for further detail.

## B. Who May Vote or Object

1.      Any party in interest may object to confirmation of the Plan if the party believes that the requirements for confirmation are not met.

2.      Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes, and (2) impaired.

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor have scheduled the claim on the their schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018 (a) of the Federal Rules of Bankruptcy Procedure.

     b       What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder or an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* Under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

## C. Who is not Entitled to Vote?

The holders of the following types of claims and equity interests are *not* entitled to vote:

1.     Holders of claims and equity interests that have been disallowed by an order of the Court;

2.     Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

3.     Holders of claims or equity interests in unimpaired classes;

4.     Holders of claims entitled to priority pursuant to §§ 507(a) (2), (3), and (8) of the Code;

5.     Holders of claims or equity interests in classes that do not receive or retain any value under the Plan and;

6.     Individuals or entities having current or future claims for administrative expenses.

**D.      Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**E.      Votes Necessary to Confirm the Plan**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class who actually vote do so to accept the Plan; and (2) the holders of at least two-thirds (2/3) of the dollar amount of the allowed claims in the class who actually vote do so to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class who actually vote do so to accept the Plan.

1.      Treatment of Non-accepting Classes

If one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in a manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it

meets all the requirements for consensual confirmation except the voting requirements of § 1129(a) (8) of the Code, does not "discriminate unfairly;" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

Bangor Savings Bank has filed a competing plan.

**CREDITORS SHOULD CONSULT LEGAL COUNSEL REGARDING THE EFFECTS OF ANY "CRAMDOWN" PROPOSED BY THE PLAN.**

## F.      Creditors Who Do Not Accept the Plan

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation case. In this case, a liquidation of the Debtor's assets would leave $0.00 for general unsecured creditors. A liquidation analysis is attached to this Disclosure Statement.

## G.      Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      <u>Ability to Initially Fund the Plan</u>

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Available cash as of the date of this document is approximately $80,000.00

2.      <u>Ability to Make Future Plan Payments and Operate Without Further Reorganization</u>

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information for each property over five (5) years. Those projections and the assumptions upon which they are based, are attached hereto.

**CONSULT WITH AN ACCOUNTANT OR OTHER FINANCIAL ADVISOR ABOUT QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## V. EFFECT OF CONFIRMATION OF PLAN

### A.      Discharge of Debtor and Injunction

Confirmation of the Plan shall discharge the Debtor from all Claims arising before the date of Confirmation, except as expressly provided in the Plan. The Confirmation Order shall permanently enjoin all Holders of Claims from taking action contrary to the Plan or to collect upon any Claim other than pursuant to

the Plan.

## B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or an additional vote of the creditors regarding the modified Plan.

## C.    Final Decree

Upon substantial consummation of the Plan, the Plan Proponent shall file with the

Court a final account in accordance with District of Maine Local Bankruptcy Rule 3022-1 accompanied by a proposed final decree making provisions by way of injunction and closing the case.

## D.    Substantial Consummation

For purposes of Section 1101(2), the Plan shall be deemed to have been substantially consummated when all of the following conditions have been satisfied: (a) the Effective Date has occurred, (b) all payments and conveyances required to be made on or prior to the Effective Date with respect to Claims then or theretofore Allowed have been made, (c) all documents required to be executed and delivered on or prior to the Effective Date with respect to Claims then or theretofore allowed have been executed

35

and delivered, (d) all available buildings on the Debtor's real estate have been leased,

and (e) all the requirements of 11 U.S.C. §. 1101(2) have been satisfied.

## E.     Retained Jurisdiction

To the maximum extent permitted by applicable law, the Bankruptcy Court shall retain

jurisdiction over the Case after the Confirmation Date for the following purposes:

1.     to hear and determine objections to claims;

2.     to hear and determine any disputes arising under the plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the plan, provided that such matters are brought before the Court prior to the point of substantial consummation as that term is defined by § 1101(2) of the Bankruptcy Code and by the plan itself, and subject, further, to the restrictions set forth in § 1127(b) of the Bankruptcy Code;

3.     to grant extensions of any deadlines set forth in the confirming order as may be appropriate;

4.     to enforce all discharge provisions under the plan; and

5.     to review and rule upon applications for compensation of professional persons. If at the time of the confirmation hearing the plan proponent expects that a broader retention of jurisdiction will be sought, but is not in a position to request a specific enlargement, the Court may conditionally reserve the question of additional retained jurisdiction in the confirming order and shall set a time within which the plan proponent shall file a motion on notice requesting retention of such additional jurisdiction as necessary, to be embodied in a supplementary order.

Respectfully submitted this 28th day of October 2017 by the Plan Proponent, Debtor DJM
Enterprises, LLC:

/s / Deborah J. Miles

Deborah J. Miles, Manager

By Jeffrey P. White, Esq., Debtor's Counsel:

**/s/  Jeffrey  P.  White**

Jeffrey     P.     White.
Maine Bar No. 3804
Counsel for the Debtor
Jeffrey .P. White
243 Mt. Auburn Ave.,
S. B-1
Auburn,   ME   04210
(207) 689-2111
jwhite@whitelawoffices.com